189 So. 219

## CARROLL v. STATE.

### 4 Div. 452.

Court of Appeals of Alabama.

May 23, 1939.

A. L. Patterson and W. R. Belcher, both of Phenix City, for appellant.

Thos. S. Lawson, Atty. Gen., and John W. Vardaman, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

This appellant was indicted for the offense of robbery. Specifically, that he feloniously took one automobile truck of the value of $500, meal of the value of $10, all of the aggregate value of $510, the property of I. N. Stewart, from his person, or against his will, by violence to his person, or by putting him in such fear as unwillingly to part with the same, etc.

The trial resulted in the conviction of this appellant and the jury fixed his punishment at imprisonment for ten years.

When this appeal was here submitted, there were also submitted similar appeals of two other cases, towit: Guy Hardis v. State, post, p. 524, 189 So. 216, and Floyd Deese v. State, post, p. 526, 189 So. 218.

There is endorsed upon the record in this case, and also upon the record in each of the other above named two cases, a note of the clerk of the court, which reads as follows: "Clerk's Note: The Grand Jury of Russell County, Alabama, on investigation of this case before this body returned three indictments against three separate defendants namely Bill Carroll, Floyd Deese and Guy Hardis. At the time this case was called for trial there was an agreement between the State and the three named defendants that they be tried jointly and a separate verdict be returned by the jury as to each defendant."

Upon an examination of the three separate records certified to and filed in this court, we find that upon identically the same testimony three different defendants have each been separately indicted for identically the same offense, alleged to have been committed against one and the same person, at one and the same time, by which they are charged with robbing the injured party of an automobile truck and meal, notwithstanding our Statutes, Code 1923, Section 3196, which provides that all persons concerned in the commission of a felony must be indicted, tried and punished as principals, and this whether they directly commit the act constituting the offense, or aid and abet in its commission, and Code 1923, Sec. 5570, which provides that when two or more persons are jointly indicted, they may be tried either jointly or separately, as either may elect. Then why the three indictments? There might be some force in the insistence that the reasonable answer to this question is that the grand jury finding and returning said indictments did not believe from the testimony of the witness before it that they had sufficient evidence upon which to find and return a joint indictment against these three defendants either upon the theory that they conspired together to commit said offense, or that they aided and abetted each other in the commission thereof. It is insisted that this conclusion is strengthened by the fact that in the general oral charge to the jury, in each case, the presiding judge of the court below did not charge the jury either the law of conspiracy, or that which pertains to one, or more, persons aiding and abetting another in the commission of an offense. The trial court charged: "Now, if you believe beyond a reasonable doubt that they forced this man to part with his automobile and with meal, irrespective of its value, by violence to his person, or as the results of fear, making him in that way unwillingly to part with them, they are guilty of highway robbery."

In brief of the Attorney General, it is contended, that according to the testimony of Stewart, the defendants Carroll, Hardis and Deese, accompanying Stewart left Phenix City and drove about two miles into the county and there Carroll and "his cohorts," Deese and Hardis, pulled Stewart out of his truck, took his money from him at the point of a pistol and ran him off. In reply to the foregoing the appellant insists there is absolutely no evidence, shown by the bill of exceptions, and none tending to show, that this appellant robbed Stewart of his money and ran him off, or that he assisted another in so doing. The evidence in the record sustains appellant in this insistence, the alleged injured party, Stewart, gave no such evidence as contended by the State in this connection. Appellant insists further, that if he had forcibly and feloniously taken Stewart's money, or assisted in so doing, still he could not be convicted of the offense charged in the indictment, for that the indictment alleges the felonious taking, by force or intimidation of Stewart's automobile truck and meal. In this insistence the appellant is correct, for in every criminal case the State must prove

beyond a reasonable doubt every material ingredient of the offense charged, and it must also similarly prove that the defendant is the person who committed it. Anderson v. State, 19 Ala.App. 606, 99 So. 778; Piano v. State, 161 Ala. 88, 49 So. 803. In Anderson's case this court said, the material inquiry is [19 Ala.App. 606, 99 So. 779]: "Did the unfortunate deceased come to his death by unlawful violence, or has the identical offense complained of in the indictment been committed? And the next inquiry is: Was it committed by the accused and in the form and manner stated in the indictment?"

In the case at bar the burden was on the State to prove beyond a reasonable doubt that Carroll, the defendant, either alone, or with another, or others, feloniously took the automobile truck and meal described in the indictment, the property of Stewart, from his person and against his will, by violence or intimidation. The felonious taking of money, by violence or intimidation, is not the offense charged in the indictment.

The rule is that where particular kind of property is described in an indictment, it must be proved as laid. Lee et al. v. State, 20 Ala.App. 334, 101 So. 907. In our case of Marsh v. State, 3 Ala.App. 80, 57 So. 387, this court held, that a person indicted for the larceny of a cow cannot be convicted under such indictment, upon proof showing the larceny of a steer calf. Under this well settled proposition of law, the taking of money, papers, etc. from the person of Stewart, by Hardis by force and intimidation, as testified to by Stewart, is not the offense charged against Carroll under the indictment in this case and upon this theory the defendant, Carroll, was clearly entitled to the affirmative charge requested by him in writing.

During the progress of the trial in the court below the condition of Mr. Stewart, the alleged injured party, whether drunk or sober at, before and after, the time of the alleged robbery was made an issue in the case inasmuch as he gave a detailed account of what was done by all of the parties prior to and at the time of the alleged robbery; of what was said to him and what he said in reply. Two of the witnesses for the defendant, Mr. J. L. Hand and Mr. O. C. Lester testified that .when they passed the defendants late in the afternoon of that day, at, or near the scene of the alleged robbery, they were standing near the truck, probably taking a drink,

and that Mr. Stewart, when they passed, was lying in the truck with his head hanging over. Mr. Hand said that he stopped there about two minutes and that Mr. Stewart was asleep. The defendant had also offered testimony tending to show that a short time before the alleged robbery they stopped at Mr. Kent's store and got a soft drink, "a chaser," and probably some smoking tobacco and that they went from this store to the place where Mr. Stewart said he was robbed. After the defendant rested in the taking of testimony the State recalled Mr. Stewart as a witness and upon his re-direct examination he testified that he did not lie down and go to sleep in the truck at the place where it stopped. On his re-cross examination he testified that he remembered hitting Mr. Kent's automobile, or truck, but didn't know the location of Mr. Kent's store and did not think that they went up to the woods from that store. Immediately the defendant propounded to him this question: "Q. Well, where did you go from there?" The State objected to this question. The trial court sustained said objection and the defendant, then and there, duly and legally excepted.

As above noted Mr. Hand and Mr. Lester testified that they passed the defendants, or the defendants and the truck at, or near the place of the alleged robbery. On his re-cross examination Mr. Stewart testified that he did not see Mr. Hand and Mr. Lester at all and did not know where he was when they passed; that when he got out of the truck up there it was not dark and that he tried to get back to Phenix City, but went to the river. Here the defendant propounded to Mr. Stewart the following question: Q. You mean to tell the jury it was daylight and you didn't know the way back to town?

The State objected to this question. The trial court sustained said objection and the defendant then and there duly and legally excepted.

Each of the above questions called for competent, material and relevant testimony. If Stewart was sober enough to observe the roadway along which the truck was driven; if he was sober enough to know when and why the truck stopped and to remember what happened to him when he did stop, then it was competent to test both his credibility and his sobriety by asking him where he went from Mr. Kent's store and why he did not know his way back to town? The trial court erred in sustaining the State's objection to each of said ques-

tions. That these errors were prejudicial to the substantial rights of the defendant is clearly apparent. Taylor v. State, 22 Ala.App. 428, 116 So. 415, 416; McGee v. State, 22 Ala.App. 500, 117 So. 487.

The defendant requested the court to give the following charge in writing: "1. I charge you gentlemen of the jury that you cannot convict these defendants unless you find that they took forcibly from Mr. Stewart a truck or meal alleged in said indictment upon the consideration of all the testimony." The court refused to give this charge and appellant insists error prevails by this action.

■ Robbery is an offense against both person and property and consists of the felonious taking of money, goods, chattels, or property of value from the person of another, or in his presence, by violence to his person, or by putting him in such fear as to cause him unwillingly to part with the same, and includes the felonious taking, by violence or intimidation, of property which belongs to the injured party or which is under his possession and control. Douglass v. State, 21 Ala.App. 289, 107 So. 791; Parks v. State, 21 Ala.App. 177, 106 So. 218.

Appellant concedes that robbery may be accomplished by the use of actual force, or by intimidation, but contends that the possession of property peaceably obtained is not converted into robbery by the use of either force or intimidation to prevent recovery thereof by the person from whom such possession was obtained. This contention asserts a correct legal principle, but it cannot be here advanced in support of the above written charge. First, said charge omits the element of fear, or intimidation, the use of which may be one of the prohibited methods of feloniously obtaining possession of property, and, second, the testimony introduced upon the trial of this case shows without dispute that Stewart, the alleged owner of the truck and meal, was at all times on the truck, upon which the meal was loaded. The procurance by him of the attendance of the three defendants with him in an effort to sell and dispose of the meal, and his permission to one or more of the defendants to drive the truck and to make offers of the sale of the meal, to be removed from the truck in his presence, did not take from him the ownership and possession of said truck and meal. If while one of the defendants was driving the truck, going from store to store, along the public highways, in an effort to sell the meal, said truck had been so negligently driven by one of said defendants as to cause a collision with a pedestrian or another vehicle, Stewart, under the law, would have been liable. The court did not err in refusing said charge.

The following special written charge was also requested by the defendant upon his trial in the court below, viz.: "3. I charge you gentlemen of the jury that these defendants are only charged with taking from the said Mr. Stewart meal and a truck and unless you are convinced beyond all reasonable doubt of their guilt by all the evidence you will find them not guilty of robbery and unless you believe they intended to convert it to their own use you cannot find them guilty of larceny."

The trial court refused to give said written charge and appellant assigns as error the refusal of this action of the court.

Above charge No. 3 asserts correct principles of law, applicable to the facts of this case, but the trial court cannot be put in error for refusing to give said charge because the principles declared in said charge are fully and thoroughly covered by the court's general oral charge to the jury, wherein the measure of proof necessary to justify a conviction of the defendant and wherein the legal definition of larceny were clearly and correctly stated.

The defendant, at the conclusion of the trial court's oral charge, requested the court to give the general affirmative charge in his behalf, which charge was in writing, and is as follows: "2. I charge you gentlemen of the jury that if you believe the testimony in this case you will acquit the defendant."

The trial court refused to give said written charge and endorsed the same "Refused," and to this action of the trial court the defendant then and there duly and legally excepted and now insists that the trial court erred in refusing to give said charge.

The State in reply to this assignment of error by appellant says that the trial court did not err in refusing to give said charge because, says the State, substantial evidence was introduced upon the trial of this case in the court below tending to establish the guilt of the defendant, Carroll, and to make his guilt a question for the jury to decide, and the State's argument is that the State's evidence tended to show that Carroll and "his cohorts" (meaning Deese and

**520**

Hardis), feloniously took Stewart's truck and meal at the point of a gun, and then ran him away.

In answer to the State's argument the appellant insists that there is no evidence in this case that shows, or tends to show, that Deese and Hardis were "his cohorts," or that he had ever had any previous association with them, or either of them, at the time said persons joined Stewart and the appellant· in the effort to sell Stewart's meal; that there is no evidence that shows, or tends to show, that the appellant entertained with these two men, or either of them, any community of purpose to rob Stewart, or that he acted in collusion with them, or either of them, in committing any offense whatever against Stewart; that there is no evidence that shows, or tends to show, that he was in any way criminally responsible for the robbery of Stewart, if he was in fact robbed; that Stewart, himself, testified that neither the appellant, nor Deese, did anything to him on .that occasion, or that they said anything to him other than·that they were Stewart's friends.

The testimony of Stewart, the alleged injured party, was the only testimony offered by the State in .support of the res gestæ of the offense charged in the indictment, and shows without question that Carroll, the · appellant, who was, up to the day of the alleged robbery, unknown to Stewart, joined Stewart in an effort to sell Stewart's meal at the sole instance and request of Stewart himself. Stewart, and not Carroll, was the one who sought the association between the two.

As to the participation of Hardis in this undertaking, Stewart, in his testimony, makes three different statements in regard thereto, viz.:

"1. That when he and Carroll reached the truck upon which the meal was loaded, he, Stewart, saw Hardis and Deese, (not calling them by name), standing nearby, and there wasn't anything said only Carroll asked them did they want to go with us, and they said they didn't care, and they just got on the truck, he did not introduce them to me, but they were these two defendants.

"2. *They* (meaning Hardis and Deese), *got with me up here in Phenix City, close to the bridge somewhere.* I don't know what caused them to come up and get with me, I didn't invite them, they just came up and joined the crowd voluntarily: I *reckon* Mr. Carroll knew them and was talking to them and probably asked them to go."

"3. *When I first got him,* (meaning Hardis), *on my truck* I didn't know he had a pistol."·

Carroll and Hardis, witnesses for the defense, both testified that Hardis contacted Stewart on that day in the room of John Saxon and that Hardis said to Stewart that he, Hardis,. wanted to go along as he was a good salesman and that Stewart not only consented for Hardis to go, but ·promised to pay him ten per cent commissions on all sales of meal made by him.

The testimony, both for the State and for the defendant, is without substantial variance that Deese joined the party at the truck, of his own volition, without objection from Mr. Stewart.

In view of the above, and all the other testimony shown by the bill of exceptions, this court is of the opinion that it tends to show that these three men got on Stewart's truck at Stewart's instance or with his consent, and that said assembly was ·not by prearrangement, community of purpose, or previous agreement among these three defendants, and that at that time the commission of a criminal offense, with reference to Stewart, his truck and meal, was not in the minds of any of them. ·

Stewart further testified that he and these three men and a negro were all on the truck when they first left out and that they made a round and came back through Phenix City, and that when they went back the last time the negro disappeared somewhere, he didn't know where; that they drove out of town, the tall man (meaning Deese) doing the driving; that he told these men that the road did not look like a road that led to a store; that they said it was; that he didn't get any more whiskey; that he took three drinks in all in the presence of the defendants; that it seemed like they drove about two miles out of town and that when they got up there the short man, (meaning Hardis), wanted to borrow some money and that he told him that he didn't have any and that Hardis said "Yes, you have too;" that the truck stopped and finally Hardis pulled him out of the truck and at the point of a pistol, and by intimidation, took his money and papers and ran him off; *that nothing was said about the truck; that neither Carroll nor Deese did or said anything to him, except they were his friends;* that Carroll and Deese were standing back at the truck, fifteen or

twenty steps away, when Hardis took his money and ran him off; that he didn't look back after his money was taken by Hardis. Stewart also testified: "That night, now, after I had walked on I was lost back there and tried to find somebody and went to the river and couldn't, and in winding around I came across this truck before I got back, and it was sitting then, the back end kind of out of the road, it was an old roadway and it wasn't but a little way to a big ditch below it, and there wasn't any switch key there, but the lights would burn. I didn't examine it to see if there was any gasoline in it." He also stated "when we stopped out there neither of them other boys said anything to me, nothing more than they were a friend to me." At no time did Stewart testify that this appellant took any part, in any manner, in the alleged commission of the offense.

The foregoing is substantially all of the testimony of Mr. Stewart, the alleged injured party covering the res gestæ of the alleged robbery. This testimony, if its credibility be conceded and in the absence of the positive denials of each of the three men involved, simply shows the commission of an offense by Hardis, in which neither Carroll nor Deese participated, the commission of which is not shown by any testimony, attendant fact or circumstance to have been planned or suggested by either Carroll or Deese. The fact is this court is thoroughly impressed by all of the testimony that all four of these men were, on that occasion, decidedly under the influence of intoxicating liquor, Stewart more so than the others, and that this charge of an alleged robbery by him is simply the aftermath of too much liquor imbibed by him at the wrong time and place.

The most important, in fact, the paramount and controlling question in this case is, was the truck and its contents feloniously taken from Stewart, the alleged injured party—was it taken at all? The evidence, without dispute, discloses that the truck in question, and its contents intact, was found at or near the same place where the alleged offense was said to have been committed, by Stewart himself, as stated by him, within a short period of time after he claimed to have been run off. As quoted above, he testified that after he got lost he tried to find somebody but couldn't and in "winding" around that he came back to this very truck at or very near the place he had last seen it.

Neither of the defendants was anywhere around at that time, they were gone. That he left the truck there on an old road, and followed road back to town and when he got to town, he stated it was about 7:30 o'clock, also, "I don't know the place I went to, it was back up in Phenix City, some garage. I didn't come to the police station. I told those fellows what happened and they called them, notified the police. It was up in the morning, the next morning when I saw my truck; when I saw it it was up at that garage I called from. I did not go back to see it when the officers found it."

Officer Daniel testified: "I got a call concerning an alleged robbery of a man named I. N. Stewart; at that time I was working as a policeman here in Phenix City. To the best of my recollection that call was around eight o'clock at night; I saw Mr. Stewart at that time, at Burke's garage, and he told me somewhere in the neighborhood, the best he could, about where he came from, and we went back in that direction trying to locate his truck; he said he didn't know just where it was, but he said he could hear water running; he went with us; and we brought him from there back here to headquarters; we didn't find the truck, he couldn't tell us,— or you couldn't find, from what he said, exactly where it was; we couldn't find it from his directions. I didn't go back out there later, the next day, and that's all I know about it."

From the foregoing it is readily ascertained that in a few minutes after Stewart arrived at the garage in question, he was questioned by officer Daniel as to the location of the truck and that Stewart was in no condition to give him the information, notwithstanding the fact he had come to said garage from the truck a short time prior.

The conviction in this case rested solely upon the testimony of Stewart, and however unsavory the conduct of these defendants might have been as to drinking, etc., as disclosed by the evidence, we are clear to the opinion it would be hazardous to incarcerate these three defendants in the penitentiary upon testimony the verity of which is so doubtful. The weight and probative force of Stewart's testimony was of course for the jury to determine, but this is a matter that should have been carefully and seriously considered by the court on the motion for a new trial. Nowhere in this testimony does it appear that this de-

fendant, and the other two men charged, were ever seen in possession of the truck except when Stewart was present. The truck was found by its owner in a few minutes after he claims he was robbed. It was intact in every way and was returned to him intact by the officers who found it the next morning. Certainly all this should be sufficient to create a reasonable probability of defendant's innocence and if such existed the defendant was entitled to his discharge.

It is clear to this court, after a careful consideration of all the testimony contained in this record, that Carroll, the appellant, was entitled to the affirmative charge requested by him in writing. The refusal of this charge by the trial court constitutes error for which this case must be reversed. Randolph v. State, 100 Ala. 139, 14 So. 792; Howard v. State, 108 Ala. 571, 18 So. 813; Ex parte Grimmett, 228 Ala. 1, 152 So. 263.

Carroll, defendant, filed a motion for a new trial, in the court below, which was overruled.

■ There is merit, we think, in the motion for a new trial.

The entire evidence shows without controversy that the entire afternoon of the day of the alleged robbery was spent by Stewart and these three defendants, when they were not drinking, in going from place to place in Phenix City, trying to sell Stewart's meal.

It is true that Stewart testified on his direct examination that he had only three drinks of whiskey during the entire afternoon he and these three men were together, but on cross examination he testified: "At the time I say that robbery took place I was drinking a right smart."

Mr. Kent, a witness called by the State, testified that he was a merchant to whom application for a sale of the meal was made and that judging from the way Stewart was driving the truck he must have been drunk at the time.

E. V. Boone, a witness for the defendant, who bought some of the meal, testified that he saw Stewart that afternoon; that he was drinking, and drinking pretty heavy; that he was pretty well drunk and that when Carroll started to give Stewart the money which Boone had given in payment for the meal Stewart asked, "Is that enough to buy any whiskey," and that at this time Mr. Stewart's eyes were glazed.

John Clark, a witness for the defendant, testified that he saw Mr. Stewart and these three defendants that afternoon about four-thirty or five o'clock; that they had a lot of meal they wanted to sell and asked him to go with them to Spud Murphy's fish camp; that he knew Mr. Stewart was drunk; that he could hardly talk; that he seemed dopey; that he talked dopey, like his tongue was about half paralyzed.

Mr. J. L. Hand and Mr. O. C. Lester, who was with Mr. Hand, defendant's witnesses, both testified that they passed Mr. Stewart and these three defendants just about sundown; at this time the truck, *according to the description of the place where the truck stood and the track signs, was at the very same place where it was found the next morning about seven or seven thirty o'clock by Mr. Whitman, a police officer,* who also described the locality. At the time Mr. Hand and Mr. Lester passed, the truck had been driven as far along the road as it could go. Both of these witnesses testified that the three defendants were standing on the ground, taking a drink, and that the fourth man, Mr. Stewart, was lying down in the truck, with his head hanging over; Mr. Hand testifying that he was asleep.

Carroll, the appellant, testified, among other things, that from Mr. Kent's store they drove to Gold Mine Branch and turned off; that Conley and Adams came up and were trying out a shot gun; that the defendants and Stewart went on and stood around until they drank up the pint of whiskey which they had and that before they finished with it Mr. Stewart was asleep in the cab; that when they got ready to go they drove the truck a little ways down a rise to a wide place to turn around and that the truck choked down; that the truck was out of gas, or something; that they could not wake Stewart up and went off and left him, and on cross examination he testified that they could not bring Mr. Stewart back to town, because the truck was out of gas.

Floyd Deese and Guy Hardis both testified in behalf of the defendant Carroll, and corroborated his testimony as to Stewart's condition, and about their having to abandon the truck for the want of gas with which to run it. And it is to be recalled that the two police officers, State's witnesses, who found the truck the next morning both testified that it was out of gas when they found it.

Carroll denied that Mr. Stewart was robbed in his presence and Hardis also denied it. Deese was not asked anything about it, either by the defendant or the State.

The trial judge properly charged the jury in the oral charge, that it was the duty of the jury to base its verdict upon the entire testimony and not to take a part of it and give it undue prominence to the exclusion of the other so as to base their verdict upon any isolated or special part of the testimony; that the jury could not disregard the testimony of one witness and accept the testimony of another, but that the testimony of each and every witness would have to be taken into consideration, weighed and considered in reaching a verdict.

Appellant insists, and we think with merit, as follows: "The great mass of testimony showed that Mr. Stewart was so drunk as to be practically disabled on that occasion. Then why the necessity of pulling him out of the truck and taking what little money he had at the point of a gun? Why the necessity of running him away from the truck and meal when the truck could not be operated? It does not stand to reason and common sense that he was robbed of his truck and meal, under the facts and circumstances shown by this testimony. The preponderance of the testimony was against his having been robbed of any money." Also "that there was no testimony that he was robbed of his truck and meal."

The trial court erred in overruling defendant's motion for a new trial.

The appellant, in a supplemental brief filed in this court on March 30, 1939, vigorously attacks the sufficiency of the judgment of the lower court by which it is asserted by the State the defendant was adjudged guilty of the offense charged in the indictment and by which he was sentenced to imprisonment in the penitentiary of this State for a period of ten years.

The judgment entry, as the same appears in the record before us, after setting out the verdict of the jury, immediately recites: "The defendant is adjudged guilty and stating in open court in response to an inquiry propounded by the Presiding Judge that he had nothing to say why the sentence of the court should not be pronounced upon him is sentenced to imprisonment in the penitentiary for a period of ten years."

Upon the filing of the brief attacking this judgment by the appellant, in fact on that same day, the State applied to this court for a writ of certiorari to the Clerk of the Circuit Court of Russell County, directing him to send up a true and correct copy of the judgment entry in this case, and also in the cases of Deese and Hardis, showing that the defendants were adjudged guilty and showing the sentence in said cases.

On April 13, 1939, there was filed in this court a paper writing, certified by the Clerk of the Circuit Court of Russell County, which is only a copy of the bench notes, signed by the presiding judge of said court, the data from which a formal judgment of conviction, showing the solemn adjudication of the guilt of the defendant and the legal imposition of the sentence of the law as punishment, should have been written up and entered by the Clerk of the court below upon the minutes of that court. An inspection of the bench notes, certified to this court from the court below, and a comparison of the same with the judgment entry contained in this record shows, without question, that in writing up the judgment of conviction in this case the Clerk of the Circuit Court of Russell County simply copied the bench notes of the presiding judge of the lower court upon the minutes of that court as the final judgment of conviction and of sentence.

Upon the submission of this case the State, in the brief filed, is silent as to the insistence of the appellant that said judgment is wholly insufficient as a formal judgment of the guilt of the defendant and that it fails to show a legal and valid imposition of the sentence of the law against him.

It has been, and is now, the practice prevailing in this court, where there is a proper judgment of guilt and an improper imposition of the sentence of the law, to affirm the judgment of conviction and to remand the cause for the imposition of a correct and legal sentence. Also, where the record does not show a proper judgment of the guilt of the defendant, but does show a proper imposition of sentence, then we have assumed that there was a proper judgment of guilt and have affirmed the case. But in the case at bar there is neither a proper judgment of guilt, nor a correct imposition of the sentence of the law. All that we have are the bench notes of the trial court certified to us as the judgment of guilt and of sentence. In the case of Wright v. State, 103 Ala. 95, 15 So. 506, this same question was before our Supreme

Court. Said the court: "It requires neither argument nor citation of authorities to show that this statement is wholly inoperative as a judgment. It appears to be no more than a mere repetition of the entries by the court upon a trial docket,—data for the judgment. In Speed v. Cocke, 57 Ala. 209, it is said: 'The judgment, decree, or order of any court, to be operative, must be certain and complete in itself, without reference to anything else by which to ascertain its meaning.' Every verdict of a jury should be followed by a judgment of the court. The usual form observed, after the verdict, is 'It is therefore considered and adjudged that the defendant is guilty as charged in the indictment' (or not guilty according to the verdict). We would not be understood as declaring that it is necessary to observe the form given, but there must be some words to show that there has been a judgment upon the verdict."

In the case of Hardaman v. State, 17 Ala. App. 49, 81 So. 449, 451, the sufficiency of the judgment shown by the record in that case was before this court for its consideration. This court held that while the judgment entry in that case was lacking in recitals showing a solemn adjudication of the court on the verdict of the jury and a pronouncement of the sentence of the law as a punishment for the offense and was therefore erroneous, said judgment entry was deemed sufficient to support the appeal. But with respect to the sufficiency of the judgment in the Hardaman case this court said: "Both the judgment of conviction and sentence shown by the minute entry * * incorporated in the record here, are insufficient to warrant the defendant's incarceration; and, if there was no other error in the record, the judgment would have to be reversed for this reason. Roberson v. State, 123 Ala. 55, 26 So. 645."

And so in the case at bar the judgment entry merely shows the verdict of the jury and the court Clerk's conclusion that the defendant was adjudged guilty by the trial court and the Clerk's conclusion, also, that the defendant was sentenced to imprisonment in the State penitentiary for a period of ten years. This judgment entry was wholly insufficient. It shows neither a solemn adjudication of the guilt of the defendant, nor the formal and necessary imposition of the sentence of the law as punishment for the offense, and as was said in the Hardaman case, supra, this case would be reversed and remanded because of the insufficiency of this judgment entry, if there was no other error in the record.

Reversed and remanded.

SAMFORD and RICE, JJ., concur in the conclusion reached for the reasons as are specifically set out in the case of Guy Hardis v. State, post, p. 524, 189 So. 216.