40 So.2d 636

### DONALSON v. STATE.

#### 4 Div. 85.

Court of Appeals of Alabama.

Feb. 1, 1949.

Rehearing Denied Feb. 22, 1949.

Reversed and Remanded on Mandate
May 17, 1949.

J. Hubert Farmer, of Dothan, for appellant.

A. A. Carmichael, Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

The indictment against this appellant contained two counts.

The first count charged that this appellant "did buy, receive, conceal or aid in concealing, one red and black spotted hog, of the value of $75.00, the personal property of Will Stewart, knowing that it was stolen and not having the intent to restore it to the owner."

The second count was to like effect except that the hog alleged to have been stolen was described as a red hog, of the value of $30, and the property of O. M. Starling.

For the State Mr. Will Stewart testified that he rented a field from O. M. Starling, the field being on the line of Houston and Geneva Counties. He and Mr. Starling had some hogs in this field.

On a Saturday night in January 1948, a red and black hog belonging to him, worth $75, was stolen from this field.

Soon after the hog was stolen he saw appellant, and appellant told him "he wouldn't have kept the hogs if he had knowed they had been stolen, he wouldn't have let them stay there." Mr. Stewart said he then told appellant that he knew his son-in-law Bob Knight stole hogs, and that appellant replied yes, he knew it.

Mr. O. M. Starling testified that a red hog, of the value of $30, owned by him,

430

was taken out of this field on a Saturday night in January, 1948.

J. B. Harvey testified that around the middle of January, 1948, he and Bob Knight, a son-in-law of this appellant, and Darry Knight rode out in his (Harvey's) automobile and got two hogs.

One was a large hog, though this witness did not know of what color. The other hog he thought was a red one.

This trio carried the hogs to a place that this witness was told was appellant's and unloaded them, arriving there about 9:30 or 10:00 that night.

As to the place and owners from which these hogs were taken by Harvey and the two Knights only the following is shown by Harvey's testimony:

"Q. Where did you go? A. I don't know the man's name. All I know it was back out here somewhere.

"Q. Was it between here and Slocomb, somewhere in that direction? A. It was back that way."

Darry Knight also testified for the State. His testimony was to the effect that he, Harvey and Bob Knight on a Saturday night during January went somewhere down near the Geneva County line and got two hogs. This witness did not describe the hogs further, nor in any way more definitely locate the place from which the hogs were obtained.

The hogs according to this witness were taken to appellant's house, around eleven o'clock that same Saturday night.

On the following Monday morning this witness returned for the hogs. At this time the hogs "were out of the pen walking around on the outside." "They were in a field."

The above constitutes a full recital of the material evidence presented by the State.

The defense presented several witnesses who testified that appellant's character was good.

The appellant testified in his own behalf. According to his testimony he remembered the night that some hogs were brought to his place. He was asleep at the time. As to what occurred on this occasion appellant testified:

"Bob Knight, my son-in-law, he come to the porch and he said, John, and I said, Huh, and he said, I have got two hogs out here I want to leave here until Monday morning and Monday morning I will pick them up, I bought them around Enterprise and don't be uneasy about them, and I said, All right, if he could find somewhere to put them, and he walked out. He didn't say anything else and that's all that was passed. That's all the words that were passed between me and him."

Appellant then returned to his bed. He never did see the hogs, but heard late Monday afternoon, on his return from Hartford, that some "boys" had come and taken the hogs away.

The evidence presented by the State, in its strongest aspect, tends to show merely that a black and red hog, the property of Will Stewart, and a red hog, the property of O. M. Starling, were stolen on a Saturday night in January 1948; that on a Saturday night in January 1948 the witness Harvey accompanied Bob and Darry Knight "out here somewhere," and the two Knights, according to Harvey, "got" two hogs. Harvey did not know whether one of the hogs was red and black or not, he could only say that one of the hogs was a large one, and he "thought" the other hog was a red one.

The hog mentioned in count one is described as a red and black spotted hog. The hog mentioned in count two is described as a red hog.

Where property alleged to have been stolen is described with particularity in an indictment proof must be submitted tending to establish the nature of the property as described. The proof must show that the property stolen was the subject matter of the offense charged. Lee v. State, 20 Ala.App. 334, 101 So. 907; Carroll v. State, 28 Ala.App. 516, 189 So. 219; Smith v. State, 30 Ala.App. 158, 2 So.2d. 341.

The only evidence describing the hogs taken by Harvey and the Knights is found

in Harvey's testimony. His testimony is completely void of any basis for inferring that the large hog was a red and black spotted one, and his statement that he "thought" one of the hogs was a red one is lacking in any probative force.

A more serious defect in the State's proof however is the lack of any evidence from which it could be reasonably inferred that the two hogs obtained by Harvey and the Knights were the same two hogs stolen from Stewart and Starling. Harvey's testimony was that he and the Knights got two hogs somewhere out in the direction of Slocomb. To conclude that they obtained the hogs from the Stewart-Starling field would necessitate a complete resort to surmise, speculation and guesswork. Verdicts in criminal cases can not be based on evidence of this type.

We are therefore clear to the conclusion that the State has utterly failed to meet the burden cast on it in this prosecution, and that this appellant was entitled to the affirmative charge requested by him in writing.

This being so we pretermit consideration of whether or not the evidence was sufficient from which the jury could infer that this appellant ever received the two hogs, knowing they were stolen.

It is our clear conclusion that in the court below this appellant was entitled to the general affirmative charge requested by him in writing because of the insufficiency of the evidence presented by the State. In effect this would have discharged the appellant. Under the provisions of Section 389 of Title 15, Code of Alabama 1940, the duty is mandatorily placed upon this court to "render such judgment as the law demands." Having been entitled to his discharge in the trial below because of the insufficiency of the evidence against him, it is the view of the writer, and of BRICKEN, Presiding Judge, that he is entitled to this same right in this court, and that therefore an order of reversal and rendition is indicated and appropriate. See Robison v. State, 30 Ala.App. 12, 200 So. 626, certiorari denied 240 Ala. 638, 200 So. 629. CARR, Judge, concurs in the order of reversal, but is of the opinion that the cause should be reversed and remanded.

Reversed and rendered.

PER CURIAM.

Donaldson v. State, 252 Ala. 170, 40 So.2d 639.